455 F.2d 615
 79 L.R.R.M. (BNA) 2542, 67 Lab.Cas. P 12,421
 Richard W. ROSEN, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, and Local 560,
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, et al., Intervenors.
 No. 71-1164.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 19, 1971.
Decided Feb. 10, 1972.
 
 Richard W. Rosen, New City, N. Y., for petitioner.
 Nancy Sherman, Asst. Gen. Counsel, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Janet C. McCaa, Attys., N. L. R. B., on the brief), for petitioner.
 Herbert New, Brenner, New & Brenner, Jersey City, N. J., for intervenor Trucking Employees.
 Edward A. Cohen, Beckerman, Franzblau & Cohen, Newark, N. J., for intervenor Local Union 560.
 Before BIGGS, ADAMS and MAX ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This case presents the question whether a union, an association of employers, and its member companies violated the National Labor Relations Act by unlawfully discriminating against non-union employees. The alleged discrimination resides in the agreement to create a pension fund with rules permitting employees to obtain credit toward their pensions for service during years prior to creation of the fund so long as the employment unit was covered by a collective bargaining agreement.
 
 
 2
 In particular, we are called upon to review a Decision and Order of the National Labor Relations Board (Board)[1] holding that Nu-Car Carriers, Inc. and Local 560, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union) had not violated sections 8(a) (3) and (1) and 8(b) (2) and (1) (A) of the NLRA, 29 U.S.C. Sec. 151, et seq. (1964), by so agreeing and by denying pension benefits to retired employee Hellmut F. Pagel[2] because he does not qualify for certain pension credits.
 
 
 3
 In 1952, the Trucking Employees of North Jersey Welfare Fund, Inc. (Fund) was created during the course of collective bargaining between the Motor Carriers Association of North Jersey, the Teamsters Union and two of its locals.[3] Under the term of the agreement, participation in the Fund was not limited to Union members. To be eligible for a pension under the rules and regulations of the Fund, an employee was required to have a minimum of 15 years of pension credits. The primary method of accumulating pension credits as set forth in the original rules was for an employee to receive credit for each year in which his employer actually contributed to the Fund on the employee's behalf. As a benefit to older employees, rules were later promulgated allowing for pension credits for years worked prior to 1952. The rules currently permit persons who were employed prior to 1952 in a unit covered by a Union contract to accumulate pension credits for such pre-1952 employment.[4]
 
 
 4
 Mr. Pagel began working for NuCar's predecessor in 1952. He joined the Union in 1953, and in 1960, his employer began contributing to the Fund on his behalf. In 1965, Mr. Pagel applied for a pension, but it was refused because Mr. Pagel lacked "15 years of pension credits." Mr. Pagel again applied for a pension in 1968, and was once more refused payment on the ground that he had only "eight years of credited service." Mr. Pagel then supplied the trustees of the Fund with the names of seven persons with post-1952 employment histories similar to his own who were granted pension credits on the basis of pre-1952 Union membership, but his request was again denied. A complaint was then filed with the Board, and after a hearing before a trial examiner and oral argument before the Board, the Board ruled that although the "rebuttable presumption" that pre-1952 Union members were eligible for pre-1952 pension credits was invalid, the basic agreement as to the operation of the Fund was not, and that Mr. Pagel was not entitled to pre-1952 pension credits because he was not employed prior to 1952 in a unit covered by a relevant collective bargaining agreement, and that he failed to demonstrate that he had been the victim of discrimination because "there is no showing on this record that members who received the advantage of the 'presumption' in proving their claims were in fact not otherwise entitled to pensions."
 
 
 5
 It is undisputed that Mr. Pagel is entitled to post-1960 pension credits, but is not entitled to credits for the period between 1952 and 1960. It is also undisputed that prior to 1952, Mr. Pagel was never employed in a unit covered by a collective bargaining agreement with the Union. Furthermore, it is clear that non-union members of units covered by appropriate collective bargaining agreements are allowed to establish pension credits for all years and share in the fund on the same basis as Union members. Therefore, the only two matters at issue are: (1) the question of law whether the Board's conclusion that the Fund's regulation with regard to pre-1952 pension credit was a "rightful byproduct" of collective bargaining and not unlawful when shared by non-Union as well as union unit employees; and (2) the mixed question of fact and law whether Mr. Pagel meets the eligibility requirements for entitlement to pre-1952 pension credits.
 
 
 6
 With regard to mixed questions of fact and law, courts of appeals are constrained to respect the findings of the Board because it is "equipped or informed by experience to deal with a specialized field of knowledge" and it possesses an "expertness which courts do not possess."[5] We are not so limited, however, in reviewing purely legal questions.[6]
 
 
 7
 We have carefully examined the disputed rules and regulations of the Fund taking into account the Board's Decision and Order invalidating the "rebuttable presumption." As we read the provisions, any employee who is able to establish active service prior to 1952 "shall be credited with a year of Pension Credits for each year in which he worked for at least 36 days in Covered Employment." An employee is defined as "any person employed by an Employer in a bargaining unit for which the employer is obligated by his agreement with [the Union] and contributes to the Pension Fund . . .," and covered employment is "employment of an Employee by an Employer, as those terms have been defined. . . ." The latter definition includes "those periods of time [prior to 1952] when the employer was covered by a collective agreement with [the Union]." Nowhere in the provisions is the eligibility requirement that an applicant for a pension must be or have been a member of the Union.[7] Every person, whether or not a Union member, must prove his eligibility in the same manner. Thus, the Fund provides pensions for employees in units represented by the Union. This is nothing more than a natural consequence of union representation; it is not an illegal discrimination in favor of employees represented by the Union, since union and non-union workers participate on an equal basis. See NLRB v. Whiting Milk Corp., 342 F.2d 8 (1st Cir. 1964); Local 138 v. NLRB, 321 F.2d 130 (2nd Cir. 1963); Central States Petroleum Union, Local 115, 127 NLRB 223 (1960), aff'd sub nom., Local 483 v. NLRB, 109 U.S.App.D.C. 382, 288 F.2d 166, cert. denied, 368 U.S. 832, 182 S.Ct. 55, 7 L.Ed.2d 34 (1961). We conclude, in the words of Section 8(a) (3), that there has been no illegal encouragement of "membership in any labor organization" by means of "discrimination in regard to hire or tenure of employment."
 
 
 8
 Petitioner contends, however, that he was actually discriminated against by the Fund because seven other persons with post-1952 employment histories similar to his received pension benefits on the basis of the presumption that they qualified for pre-1952 credits because they were Union members prior to 1952. The Board found that Mr. Pagel had not been the victim of discrimination because in all seven cases, the employees also qualified for benefits by virtue of having in fact worked in covered employment. The essence of Mr. Pagel's claim is that the discrimination lay in the requirement that he prove his entitlement, whereas Union members did not bear such a burden.[8] But, there was no evidence that Union members not otherwise qualified received pre-1952 pension credits, nor was there evidence that Union employees situated similarly to Mr. Pagel received such pensions. Thus, the finding of the Board that Mr. Pagel was not the victim of actual illegal discrimination is supported by substantial evidence and will be affirmed.
 
 
 9
 It is clear that Mr. Pagel simply does not meet the Fund's lawful eligibility requirements. Therefore, he is not entitled to receive the pension for which he applied. Accordingly, the petition for review will be denied.
 
 
 
 [1]
 The Decision and Order are reported at 187 NLRB No. 117 (Jan. 15, 1971)
 
 
 [2]
 Mr. Rosen is an attorney who represents Mr. Pagel. Although Mr. Rosen's name has been carried forward into the caption of this case, Mr. Pagel remains the real party in interest
 
 
 [3]
 The Fund is wholly supported by contributions from employers having collective bargaining agreements with certain Union locals
 
 
 [4]
 Regulations of the Fund which allowed Union members to prove entitlement to pension credits for employment prior to 1952 on the basis of a "rebuttable presumption" that if they were members of the Union prior to 1952 they were covered by the Fund were invalidated by the Board as discriminatory in favor of Union members
 
 
 [5]
 Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). See NLRB v. Reed & Prince Mfg. Co., 205 F.2d 131 (1st Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953)
 
 
 [6]
 See e. g., Oneita Knitting Mills, Inc. v. NLRB, 375 F.2d 385, 391 (4th Cir. 1967); NLRB v. Miranda Fuel Co., Inc., 326 F.2d 172, 175 (2nd Cir. 1963)
 
 
 [7]
 Although the present Union contract with Nu-Car requires that employees be Union members, there is no evidence that previous contracts so provided
 
 
 [8]
 It appears that Mr. Pagel agrees that the presumption is illegal, but as a remedy, would like to have its benefits extended so that he could take advantage of it, rather than have it invalidated for all others. The flaw in such reasoning is patent-if that remedy were adopted, everyone in the country, who not has an association with the trucking industry would be entitled to pre-1952 pension credits, even though such persons never worked in covered employment